# Richmond

## George Cox v. Commonwealth of Virginia.

October 13, 1947.

Record No. 3265.

Present, *Hudgins, C. J., and Gregory, Eggleston, Spratley and Buchanan, JJ.

*Note.—Former Chief Justice Holt sat during the argument of this case and before his death concurred in this opinion.

The opinion states the case.

*S. W. Coleman, Jr., E. T. Carter, Jr.*, and *George M. Warren*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *Henry T. Wickham*, for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

George Cox was convicted by a jury of voluntary manslaughter and his punishment fixed at five years in the penitentiary. The court confirmed the verdict.

A brief statement of the material facts gathered from the credible testimony of the witnesses for the Commonwealth follows: Cox, who was thirty-three years old at the time, conducted a restaurant and dance hall known as Edgehill Tavern. He also had a license to dispense beer and wine. Until the night of the homicide he had not previously known Eugene Miller whom he shot and killed. Cox had an artificial limb and physically was not as strong as Miller.

Cox had a rule in his tavern, which he personally enforced, to the effect that a man or men unaccompanied by a woman or women could not go on the dance floor. Miller violated this rule, words followed and Cox attempted to eject him. He took hold of Miller by the coat collar with his left hand and was forcing him out of the tavern. Cox's right hand was in his pocket. After they reached the front room Miller threw a bottle at Cox but it did not strike him. Miller then began to back away, and after he had gone four or five feet backward, Cox drew his pistol from his pocket and shot him, the bullet entering at a point just beneath the left eye and passing through his head. From this wound

Miller died. Cox was in the habit of carrying a pistol because some time prior thereto he had been held up.

At the time the shot was fired Miller was offering no resistance, had both of his hands at his side, and was in no way threatening Cox. The chief deputy sheriff, who reached the scene in a very short time, testified that Cox told him that he (Cox) stated to Miller before the bottle was thrown that "if you hit me with that you will go out feet first." This statement made by Cox to the officer was never unqualifiedly denied by him.

The testimony offered by Cox is contradictory of that stated. He said that Miller was intoxicated and disorderly, and that he, Cox, had attempted to go to the telephone and call the sheriff but was prevented from doing so by Miller who grabbed him and began hitting him, and that he, Cox, then began to defend himself. He also stated that Miller took a pint bottle out of his pocket and attempted to strike him, and that he threw the bottle at him but missed his aim. Cox also testified that he did not intend to shoot Miller, that he drew his gun to hit him over the head because Miller was striking him with the bottle and that the gun was discharged unintentionally. He said that he inadvertently pulled the trigger as he struck Miller over the head.

The jury evidently did not believe the statement of the accused and accepted the testimony of the witnesses who were introduced for the Commonwealth. We think that the verdict is supported by the evidence.

It is assigned as error that the court should not have instructed the jury on the crime of murder, as it did, and that by these instructions that offense was unduly emphasized, to the prejudice of the accused. It is apparent that the evidence was sufficient to warrant the court in granting the instructions on the crime of murder. The jury, however, from its verdict, evidently considered the surrounding circumstances of extenuation, and found the accused guilty of voluntary manslaughter instead of murder. This they had a right to do.

As already stated, the evidence of the Commonwealth abundantly shows that Miller was leaving and was making no resistance at the time the accused pulled the pistol from his pocket and shot him. There is abundant evidence also to show that when Miller threw the bottle at the accused an appreciable period of time elapsed between that time and the time the accused fired the fatal shot. Sufficient time elapsed for Miller to back four or five feet after the throwing of the bottle and before the firing of the fatal shot. In this connection, as we have already stated, the accused had, a short time before, threatened that if Miller hit him with the bottle he, Miller, "will go out feet first."

This is not a case where a man was defending his castle. That principle is not involved. Miller entered the tavern on an implied invitation or license; it was a public place. Even if he were disorderly after entering the tavern, in ejecting him the accused could use no more force than was necessary under the circumstances. Cox used excessive force which resulted in Miller's death and he was therefore guilty of a felonious homicide. Miller's conduct as shown by the evidence did not justify the taking of his life. *Fortune* v. *Commonwealth*, 133 Va. 669, 112 S. E. 861. Whether it was murder or manslaughter was a jury question, and in this case it was proper for the court to grant instructions defining the crime of murder. This is not a case of death resulting from mutual combat. Miller was not fighting or resisting at the time he was shot by Cox.

The special prosecutor indulged in improper argument to the jury. For instance, he argued that, "Anybody who deals in demon rum is on the downward path." This statement was irrelevant, improper, and might have prejudiced the case of Cox but it evidently did not. The special prosecutor made other improper remarks and indulged in cross-examination which was also improper, but likewise it is apparent that this improper conduct did not prejudice the accused for the verdict of voluntary manslaughter and the punishment of five years fixed by the jury in and of itself shows that the jury was not actuated by any bias or

prejudice when consideration is given to the evidence in the case. No lower degree of homicide would have been justified by the evidence.

Twenty-four names were drawn from the jury box and listed by the clerk in accordance with the statute, but instead of issuing a *venire facias* the clerk turned the list over to the sheriff and he summoned twenty of these men for jury service. After he had summoned them he reported to the clerk who then issued a *venire facias* in which the names of these men appeared. Thereupon the sheriff made his return upon the *venire facias*. It is contended that this irregular procedure constituted reversible error.

According to the agreed statement of facts which is a part of the record, it was agreed between counsel for the accused and the attorney for the Commonwealth that no objection was made to the failure of the clerk to have promptly issued the *venire facias* and to the irregularity in connection therewith until after the verdict of the jury. Under Code, section 4895 such irregularities are cured if no objection thereto is made prior to swearing the jury. In fact, that statute further provides that no judgment shall be arrested or reversed because the record may fail to show that there was a *venire facias* unless objection was made before the swearing of the jury.

The original *venire facias* failed to provide a sufficient number of jurors for the trial of the case. There were other jurors in attendance upon the court whose names had been drawn from the jury box and listed. They had been summoned to serve as a petit jury. The court, in order to secure a sufficient number for the trial of this case, ordered that six of these other jurors be placed on a list and summoned for this case. This was done, and later another *venire facias* was issued and executed including their names. Objection was made to this procedure. The court then offered counsel for the accused an opportunity to examine these additional six jurors upon their *voir dire*. Counsel did not see fit to take advantage of this opportunity.

Under Code, section 4896, another *venire facias* may

issue in order to complete the panel where the original *venire facias* does not provide a sufficient number of jurors, provided that the names are selected from the list. Here they were not only selected from the list but were actually drawn from the box.

The judgment is affirmed.

*Affirmed.*